JOSEPH H. MOORS, APPELLANT, *v.* HENRY P. KIDDER AND OTHERS, RESPONDENTS.

*Factors and warehousemen act—1830, chap. 179, sec. 3—what a lender must show to entitle him to protection under it.*

To entitle a person advancing money, upon the security of goods under the control of the borrower, to the protection afforded by section 3 of chapter 179 of 1830, relating to factors, agents, warehousemen and other custodians, it must be shown that the borrower had been intrusted by the owner with the possession of a bill of lading or a warehouse receipt for the delivery of the merchandise, and that the loan was made upon the faith thereof, or if no documentary evidence of title was given to the borrower, that he was intrusted with the possession of the merchandise for the purposes of sale, or as a security for advances to be made or obtained thereon.

It is not sufficient to show that he was intrusted with the possession of the goods, if he was so intrusted with them only for the purpose of enabling him to have the merchandise stored for and in the name of the true owner.

APPEAL from a judgment dismissing the plaintiff's complaint on trial at the circuit, and from an order denying a motion for a new trial.

*E. R. Robinson* and *O. E. Bright*, for the appellant.

*Charles B. Alexander*, for the respondents.

DANIELS, J. :

The action was brought to recover the possession of ninety-five cases of shellac. They were taken into the possession of the sheriff, but returned by him to the defendants upon an undertaking executed and delivered for that purpose. The plaintiff claimed title to the shellac under a loan of money made by him to Paul M. Swain for the security of which the shellac had been by an agreement hypothecated. The defendants, constituting the firm of Baring Brothers & Co., and their agents, carrying on business in Boston, under the firm name of Kidder, Peabody & Co., claimed the title to the shellac as security for money advanced in the payment of its purchase-price. These defendants issued to Swain a letter of credit by which the firm of A. C. Bancroft & Co., which was engaged in business at Calcutta, was authorized to draw upon Baring Brothers & Co., for the cost or purchase-price of the shellac. And Swain in whose behalf it was to be purchased and shipped, entered into an agreement with them by which they were entitled to all the property purchased by means of the credit and the proceeds thereof, together with the bill of lading for the same, as collateral security for the reimbursement of the sums advanced by them. And it was made subject to their order with authority to take possession and dispose of the same at their discretion for their security or reimbursement, and substantially placed under their control until the moneys advanced by them upon the draft or drafts, to be drawn should be refunded. Under this letter of credit and the accompanying agreement, Bancroft & Co. purchased the shellac for Swain and drew their draft upon the defendants, Baring Brothers & Co., for its price. They shipped it on board the steamship City of Manchester at Calcutta, and by the bill of lading taken for it, consigned it to this firm. It was carried to England by this ship and there transferred to the steamship Bolivia, which delivered it at the city of New York, where it was placed in store. It remained in store in a bonded warehouse until Swain applied to Kidder, Peabody & Co. as agents of Baring Brothers & Co. for the bill of lading. They delivered it to him with a blank indorsement upon it, and it was then taken to William A. Brown, a custom-house broker, who by virtue of its authority, secured the transfer of the shellac from what has been called the general account, in which no owner's name was made to

appear.   Brown added the name of his own firm above the blank indorsement on the bill of lading, which enabled him to control the entry as well as the property.   Under that authority it was transferred or placed to the credit of Swain, who applied to the plaintiff for a loan of money upon this and other merchandise.   At that time no warehouse receipt had been issued to Swain, and he placed with the plaintiff other security in lieu of it until it should be obtained, and the plaintiff at the time advanced a portion of the loan.   A written order was given by Swain to Casy, who had the possession of the warehouse containing the shellac, to deliver the ninety-five cases to the plaintiff, and on the surrender of that order Casy issued a receipt for the shellac to the plaintiff, who thereupon completed the loan agreed to be made, and surrendered the other securities held in place of the receipt.   That he proceeded in making the loan and obtaining the warehouse receipt for the merchandise in good faith was proved by the evidence taken upon the trial of the action ; and that Swain had obtained the possession of the merchandise when he applied for the loan of the money, was also a fact proven in the case, but that possession of itself would not empower him to transfer a title to the shellac to the plaintiff. (*Covill* v. *Hill*, 4 Denio, 323, 327; *Hazard* v. *Fiske*, 83 N. Y., 287, 294.)   A person himself having no title to personal property cannot, by the mere fact of its possession, transfer a title to it, and in that manner deprive the actual owner of his property.   The law requires additional evidence of authority to accomplish that result, added to and beyond the fact of possession.

If the bill of lading indorsed in blank with the name of the consignees of the property had been presented to the plaintiff, and he had advanced the money upon the faith of the evidence of title so created, he would have been empowered to hold the property under the provision of the statute declaring that every factor or other agent intrusted with the possession of any bill of lading for the delivery of merchandise shipped under it, shall be deemed to be the true owner thereof, so as to give validity to any contract made by him with any other person for the sale or disposition of the whole or any part of such merchandise, for money advanced or negotiable instrument or other obligation given in writing by such other person upon the faith thereof.   (2 R. S. [6th ed.], 1168, § 3.)

But to secure protection to a person advancing money by this provision of the statute, it is requisite that the advance shall be made upon the faith of the bill of lading. That is the language used in the statute. It must be upon " the faith thereof." (*First National Bank of Toledo* v. *Shaw,* 61 N. Y., 283, 301 ; *Kinsey* v. *Leggett,* 71 id., 387, 395.) But the loan was not applied for on the faith or evidence of title supplied in this manner by the bill of lading and its blank indorsement. That evidence of ownership was not produced or brought to the attention of the plaintiff, and by reason of the omission he cannot avail himself of the benefit of this provision of the statute. It appears by his own evidence, and that of Mr. Curtiss to whom a portion of the business was intrusted, that the money was obtained by Swain wholly and exclusively upon his representation that he was the owner of the shellac. And that excluded all possible advantage which might otherwise have been derived from the bill of lading, if the loan had been made upon the evidence of right or title furnished by its indorsement. The plaintiff's right to the property is equally as defective under a somewhat similar act in the State of Massachusetts, where the application for the loan was made and the money was obtained. For it is only where the agent has been intrusted with a bill of lading consigning merchandise to him for the purpose of sale, that a transaction of the nature of that which took place between Swain and the plaintiff can be protected. His title under each of these statutes, which, on this subject, are essentially the same, must depend upon the fact whether Swain had been intrusted with the possession of the merchandise for the purpose of sale, or as a security for advances to be made or obtained thereon. If he had been, then under another provision contained in the third section of each of these acts his authority to dispose of the property will require to be maintained. But if Swain was not intrusted with the possession of the merchandise for the purpose of sale, or as a security for advances to be made or obtained upon it, then the plaintiff has no title upon which he can maintain his right to the property against the defendants. For by the statute it is indispensable that he shall have the possession for the purpose of sale or as a security for advances to be made or obtained, before he can transfer a title to any person dealing with him upon the faith of such possession. This is the construction which the language of the statute very clearly requires

shall be given to these provisions. And it is in harmony with the authorities of *Cartwright* v. *Wilmerding* (24 N. Y., 521) and *Bates* v. *Cunningham* (12 Hun, 21), and it is also supported by *Collins* v. *Ralli* (20 id., 246).

It becomes necessary, therefore, to examine the evidence to ascertain whether, as a matter of fact, Swain had been intrusted with the possession of the shellac by the indorsement of the bill of lading to him for the purpose of sale, or as a security for advances to be made or obtained thereon. At the time when the bill of lading so indorsed was delivered to him he is shown to have executed and delivered to Kidder, Peabody & Co., as the agents of Baring Brothers & Co., a receipt, in and by which it was stated and agreed that the invoice and bill of lading had been delivered to him for the purpose of enabling him to enter the goods referred to in them at the custom-house, and the agreement was added that this should be done in the name of and for Baring Brothers & Co., and subject to their order. The receipt and agreement is in the following form:

BOSTON, *Nov.* 18, 1881.

To Messrs. KIDDER, PEABODY & Co., *Boston:*

GENTLEMEN. — I acknowledge receipt from you, as attorneys for Messrs. Baring Brothers & Co., of invoice and bill of lading of

S S T

Mirzapore

D C                       One hundred cases of shellac.

C    M                    ℞ 15678 5/6.

New York.

Shipped by C. C. Bancroft & Co. on board SS. *Co. Manchester*, at Calcutta, and consigned to the order of Messrs. Baring Brothers & Co., and indorsed by you, as their attorneys, to me. Such invoice and bill of lading are delivered to me for the purpose of enabling me to enter the goods referred to in them at the custom-house.

And I hereby agree to place the goods on storage for Messrs. Baring Brothers & Co., and subject to their order, and so that they may be applied to the due performance of the agreement contained in the receipt signed by me for your letter of credit on them, No.

2419, or any other letter of credit on them, through which such goods have been purchased, we agreeing to keep them covered by insurance against fire for account of and loss payable to Messrs. Baring Brothers & Co.

It is understood that the said goods are to be warehoused in the name of Messrs. Baring Brothers & Co., and warehouse receipts therefor handed to you for them.

Very respectfully,

Your obedient servant,

(Signed) PAUL M. SWAIN.

And by its language it plainly excluded all right on the part of Swain to sell the merchandise, or obtain any loan upon it. An effort was made to overcome this effect of the instrument by proving other transactions between these parties in which Swain had disposed of property consigned in this manner for which he had received bills of lading indorsed in a similar way. But this proof did not extend so far as to create a presumption that it was intended on the part of the indorsers of the bill of lading that the merchandise should, notwithstanding the receipt and agreement, still be subject to the disposition of Swain. For it failed to prove that either member of these firms had been made acquainted with the fact that Swain had in this manner disposed of the property. The nearest approach to anything from which knowledge of his conduct in this respect might be inferred was one transaction only which Swain testified was brought to the attention of one of the clerks of Kidder, Peabody & Co. And as that was adjusted without any default on his part, it does not seem to have elicted any special comment or in any form to·have been brought to the attention of either member of the firm in which the clerk himself was employed, while the evidence given by one of the active members of that firm directly denied the existence of knowledge or information that Swain had been dealing in this manner with consigned property. It further appeared by the evidence of the witness Collins, that Swain applied to him for the papers concerning this consignment of shellac. His statement is : " I asked what he was going to do with the papers and he said he wanted to enter them at the custom-house and warehouse them for account of Baring Brothers & Co. I took the papers and the receipt to Mr. Peabody and asked him if I should deliver these

papers to Mr. Swain upon that agreement, that Mr. Swain was to
warehouse them in the name of Baring Brothers & Co. Mr.
Peabody said I could deliver them, and upon that' authorization I
delivered the papers to Mr. Swain, taking a receipt signed by him."
The evidence of Mr. Peabody corroborates this statement so far as
it relates to the authority concerning the delivery of the documents.
His statement is that Collins asked him if the goods could be sur-
rendered to Mr. Swain, and that he replied that they could be
surrendered only upon the terms of the agreement which was held
from Mr. Swain, and that he consented to the form of the receipt
which was taken. The testimony of neither of these witnesses was
in any manner contradicted upon the trial, and it was sufficient to
prove, as a matter of fact, that the bill of lading for the shellac was
not indorsed, or delivered to Swain, to intrust him with the posses-
sion of the merchandise for the purpose of sale, or to be made use
of, by way of security, for any loan to be obtained upon it, but
solely and only to authorize him to enter the goods at the warehouse
in the name of Baring Brothers & Company, and that invested
him with no authority under this provision of the statute to dispose
of or hypothecate the property to the plaintiff for a loan of money
to himself. The agreement, according to this evidence, was specific
as to this quantity of merchandise, that Swain should be invested
with no further power of control or disposition than simply to
cause it to be entered in compliance with the terms of the agree-
ment contained in his receipt. The plaintiff testified to a conversa-
tion which he had with Mr. Kidder after the commencement of this
action, in which the former stated that the latter had allowed Mr.
Swain for a number of years to do as he pleased with the merchan-
dise that he had intrusted to him, and that Mr. Kidder replied that
he was sorry to say that he had. But this conversation was not in
the slightest degree in conflict with the evidence of Collins and the
import of the receipt that, as to these particular goods, the authority
of Swain was restricted to their entry in the manner agreed upon
in the warehouse.

Further reliance in support of an alleged authority given to Swain
to sell the goods was placed upon the allegations contained in the
complaint in an action brought by Henry P. Kidder and others
against Swain and Casy for the recovery of the value of these

goods. The statement so made included a representation from Swain that he had made a sale of the shellac and requested the papers held by Kidder, Peabody & Co. to be delivered to him for the purpose of effecting such sale, and that they, relying upon the representations so made by Swain, did deliver to him the papers and the possession of the property. If this statement had remained unaffected by any addition to it, it might very well be assumed from it that Swain had been authorized to sell or hypothecate the merchandise. But it did not, for the statement immediately followed that the papers had been delivered to Swain under an agreement with him, of which a substantial copy is afterwards set forth, and that agreement was the receipt subscribed and delivered by him when he was placed in possession of the indorsed bill of lading. These allegations, therefore, proceed no farther than to show that Swain desired to obtain possession of the papers and the merchandise for the purpose of effecting a sale, but that they were given to him under the restriction that he should for the time being cause the goods to be entered in the name of Baring Brothers & Co. At most, he desired authority to sell, but he was restricted simply to the power of making this particular entry. No authority to make a sale or hypothecation of the goods could therefore be inferred from what is alleged to have been represented by Swain and what followed in the way of limited authority given to him. As to this merchandise, that was all the power or control conceded to him. It was to make this particular entry, and that is clearly shown to have been the intention of the parties by what transpired at the time when the indorsed bill of lading was delivered to him, and this receipt and agreement were taken from him. He was in no form intrusted with the possession of the merchandise for the purpose of sale, or with the power to make use of it as a security for any advances to be obtained thereon. And without that authority the provisions of the statute afford the plaintiff no protection for the advances made by him upon the misrepresentation of the title made to him by Swain. He was not placed in such a relation to the property, or to the evidences of its ownership, as enabled him to make the disposition of it which he attempted in favor of the plaintiff, upon the sole ground of his representation that he was its owner. The evidence was so decisive as to prove

these to be the facts in the case. There was no question under it which could properly be submitted for the deliberation or decision of the jury, but as the facts were made to appear they required the case to be disposed of as it was by the court. The disposition which was made of it seems to have been well warranted by the circumstances proved by the evidence.

Other exceptions were taken which have not been specially relied upon in support of the appeal, but they relate to matters outside of the controlling facts appearing upon the trial. Whether they were rightly or erroneously disposed of can be of no advantage to either of the parties, for by the facts themselves, which were proved beyond dispute, the firm of Baring Brothers & Co. were entitled to the possession and control of the property, and Swain had no such power over it as in any form enabled him to subject it to the loan made by the plaintiff, solely upon the faith of his own representation that he was the owner of the property.

The judgment and the order from which the appeal has been taken should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment and order affirmed.